NOT FOR PUBLICATION                                    (Docket Nos. 8, 12)

## IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF NEW JERSEY
## CAMDEN VICINAGE

```
_____
                                    :
MIDORI NEWLIN,                      :
                                    :
          Plaintiff,                :   Civil No. 05-5746 (RBK)
     v.                             :   OPINION
                                    :
INVENSYS CLIMATE CONTROLS,          :
et al.,                             :
                                    :
          Defendants.               :
_____ :
```

**KUGLER**, United States District Judge:

This matter comes before the Court on motion by Defendant Robertshaw Controls Company ("Robertshaw") to dismiss Count Three of the Complaint of Plaintiff Midori Newlin ("Plaintiff"), and motion by Plaintiff to file a Second Amended Complaint. For the reasons set forth below, Robertshaw's motion shall be granted in part and denied in part and Plaintiff's motion shall be granted.

### I.   Background[1]

On May 2, 2005, Plaintiff was an employee of the Cuba Libre Restaurant in Atlantic City, New Jersey. While working in the

---

[1] Because the Court must accept all well plead allegations as true for the purpose of a motion filed pursuant to Rule 12(b)(6), In re Rockefeller Ctr. Properties, Inc., Sec. Litig., 311 F.3d 198, 215 (3d Cir. 2002), and because Plaintiff's motion for leave to file a Second Amended Complaint will be granted, as set forth below, the following facts are taken from Plaintiff's Second Amended Complaint.

kitchen, Plaintiff lit a commercial oven containing a thermal safety control valve manufactured and designed by Defendant Robertshaw. The valve malfunctioned, causing a flashback fire which resulted in severe burns to Plaintiff's face, arms, hand, and upper body. Plaintiff brought suit against Defendants Invensys Climate Controls, OEM Products Group of Long Beach California, Robertshaw, the Jade Range Company, and the Maytag Corporation in the Superior Court of New Jersey on October 28, 2005.[2] Defendants removed the action to this Court on the basis of diversity jurisdiction on December 8, 2005. Presently before the Court are Defendant Robertshaw's motion to dismiss the Third Count of the First Amended Complaint[3] for failure to state a claim, and Plaintiff's subsequent motion for leave to file a Second Amended Complaint.

**II.  Motion for Leave to File Second Amended Complaint**

Where a plaintiff has already amended the complaint or defendants have filed a responsive pleading, the plaintiff may further amend only with leave of the court. Fed. R. Civ. P. 15(a); Shane v. Fauver, 213 F.3d 113, 115 (3d Cir. 2000). Under

---

[2] Invensys Climate Controls and OEM Products Group were dismissed from the suit without prejudice on April 3, 2006, and Defendant Singer Equipment Company was added on November 23, 2005.

[3] Because Plaintiff's motion to amend will be granted, Robertshaw's motion to dismiss will be construed as a motion to dismiss the Third Count as amended.

2

Rule 15(a), such leave should be "freely given when justice so requires." Fed. R. Civ. P. 15(a); Foman v. Davis, 271 U.S. 178, 182 (1962) (instructing courts to permit amendments freely to afford plaintiffs the opportunity to test claims on the merits). District courts nevertheless retain substantial discretion to deny amendments in the event of bad faith, undue prejudice to opposing parties, futility of the amendment, or "repeated failure to cure deficiencies by amendments previously allowed." Davis, 271 U.S. 182; In re Burlington Coat Factory Sec. Litig., 114 F.3d 1410, 1434 (3d Cir. 1997) ("Among the grounds that could justify a denial of leave to amend are undue delay, bad faith, dilatory motive, prejudice, and futility.").

Robertshaw contends that Plaintiff's efforts to amend her complaint would be futile because the Third Count, even as amended, still fails to state a claim upon which relief could be granted. However, as provided in greater detail below, the Third Count of Plaintiff's Second Amended Complaint does indeed state a claim. Accordingly, Plaintiff's motion to amend her Complaint will be granted.

**III. Motion to Dismiss**

**A.   Standard**

Robertshaw argues that the Third Count of the Second Amended Complaint does not state a claim since "Plaintiff cannot support a cause of action under either the CPSA or the New Jersey

Products Liability Statute for failure to give notice to the Consumer Product Safety Commission ("CPSC"), failure to recall or failure to abide by the recall." (Def. Opp'n Mot. Am. Compl., filed Feb. 3, 2006, at 3.)

Dismissal under Rule 12(b)(6) is proper only if "it appears beyond doubt that plaintiff can prove no set of facts in support of his claim which would entitle him to relief." In re Rockefeller Ctr. Properties, Inc., Sec. Litig., 311 F.3d 198, 215 (3d Cir. 2002); Klein v. General Nutrition Co., 186 F.3d 338, 342 (3d Cir. 1999). A motion to dismiss "tests the legal sufficiency of the complaint." In re ATI Tech., Inc., Sec. Litig., 216 F. Supp. 2d 418, 427 (E.D. Pa. 2002) (citing Holder v. City of Allentown, 987 F.2d 188, 194 (3d Cir. 1993)). "The inquiry is not whether plaintiffs will ultimately prevail in a trial on the merits, but whether they should be afforded an opportunity to offer evidence in support of their claims." In re Rockefeller, 311 F.3d at 215.

The Court must "accept all well-pleaded allegations in the complaint as true and [] draw all reasonable inferences in favor of the non-moving party." Id. at 215 (citing Scheuer v. Rhodes, 416 U.S. 232, 236 (1974)); In re Burlington Coat Factory Sec. Litig., 114 F.3d 1410, 1420 (3d Cir. 1997). However, the court need not credit a plaintiff's "bald assertions" or "legal conclusions draped in the guise of factual allegations." Id.

4

**B.     Plaintiff's New Jersey State Claims**

Robertshaw requests dismissal of the Third Count of Plaintiff's Complaint, including Plaintiff's demand for punitive damages, on the grounds that "no claim for 'negligent recall' exists under New Jersey law." (Def. Opp'n Mot. Am., filed Feb. 3, 2006, at 8.) Plaintiff does not dispute the availability of a right of action for "negligent recall"; rather, Plaintiff characterizes the claim as one for punitive damages because Robertshaw sold the valve despite having actual knowledge of the defect.[4] Under Plaintiff's construction of the allegations, the recall does not provide the basis for the claim itself, but merely serves as evidence of this knowledge.

An examination of the Complaint's language confirms Plaintiff's position. Plaintiff alleges that Robertshaw and the other Defendants knew that they "designed, manufactured, marketed, serviced and sold a Jade Range which contained a defective safety control valve. . . . Despite said knowledge, said defendants acted in a wanton, willful and reckless manner in disregarding the danger of harm caused to said persons by the defect, in failing to recall the defective part, in failing to

---

[4] To recover punitive damages in New Jersey, the plaintiff must prove "by clear and convincing evidence, that the harm suffered was the result of the defendant's acts or omissions, and such acts or omissions were actuated by actual malice or accompanied by a wanton and willful disregard of persons who foreseeably might be harmed by those acts or omissions." N.J.S.A. 2A:15-5.12(a).

5

correct the known defect and in failing to issue warnings to persons who would likely be injured by said defect." (2d Am. Compl. at 7-8, ¶ 2.) Despite Robertshaw's arguments to the contrary, no fair construction of these allegations suggests that Plaintiff is alleging a cause of action for failure to recall. Rather, the crux of the claim is that Defendants knew the valve was defective and nevertheless failed to act on this knowledge in any way, including, but not limited to, recalling the product.

A later paragraph addresses the recall in greater detail, but again, the text cannot be construed as alleging a claim based on the failure to recall. Specifically, the Second Amended Complaint provides:

> that the defective thermal safety control valve was recalled by the U.S. Consumer Product Safety Commission pursuant to the Consumer Product Safety Act 15 U.S.C. Sections 2053, et seq., as unfit for use because it caused leaking gas to result in a fire and, specifically, recalled the Jade Range thermal safety control valve . . . [and defendants] knew that the thermal safety control valve in question was defective and that said defect could cause a fire flashback which would burn persons using the oven and knew that said product had been recalled and that said defendants, with knowledge of the dangers of the sale, marketing and use of the product in question, and knowledge of the recall, sold and marketed the Jade Range in question to the Cuba Libre restaurant, as stated heretofore.

(2d Am. Compl. at 8, ¶ 3.)

Nothing in the language of the Complaint suggests that the recall constitutes the basis for Plaintiff's claim; reasonably construed, the Complaint alleges only that Defendants had actual

6

knowledge of the defect which caused Plaintiff's injury and nevertheless "allowed the defective thermal safety control valve to remain in the oven in question with knowledge that said defect could cause a gas leak which would result in flashback or excessive flames which would result in injuries to persons using the range in question." (2d Am. Compl. at 8, ¶ 3.) The recall thus serves merely as an indication of Defendant's knowledge for the purposes of Plaintiff's claims under N.J.S.A. 2A:58C-2 and N.J.S.A. 2A:15-5.12(a).

Accordingly, Plaintiff's Third Count clearly states a claim and Robertshaw's motion to dismiss the state claims and demand for punitive damages will be denied.

**C.   Plaintiff's Claims under the Consumer Products Safety Act**

Plaintiff Second Amended Complaint also alleges "that defendant failed to provide notice of the defective condition to the Consumer Products Liability Commission [("Commission")] in violation of the Consumer Products Safety Act, 15 U.S.C. Section 2053, et seq." (2d Am. Compl. at 7-8, ¶ 2.) Robertshaw moves for dismissal of this claim on the ground the statute provides no cause of action authorizing private litigants to bring suit for failures to comply with the Commission's notice requirements.

The CPSA imposes on manufacturers, distributors, and retailers of consumer products a duty to inform the Commission of any product that "creates an unreasonable risk of serious injury

or death."[5] 15 U.S.C. § 2064(b)(3). <u>United States v. Athlone Indus., Inc.</u>, 746 F.2d 977, 982 (3d Cir. 1984)("This notification requirement was statutorily imposed upon manufacturers . . . because they are often the first to receive information about hazardous consumer products."). Although the CPSA does authorize private civil suits for damages in certain instances, codified as 15 U.S.C. § 2072(a), most courts agree that this authority does not extend to permit private enforcement of the statutory reporting requirement of 15 U.S.C. § 2064. <u>Zepik v. Tidewater Midwest, Inc.</u>, 856 F.2d 936, 940-44 (7th Cir. 1988); <u>Drake v. Honeywell, Inc.</u>, 797 F.2d 603, 604 (8th Cir. 1986); <u>Klingler v. Yamaha Motor Corp.</u>, 738 F. Supp. 898, 901 (E.D. Pa. 1990). In particular, courts reason that the private right of action in §

---

[5] The statutory reporting requirement provides in full:
Every manufacturer of a consumer product distributed in commerce, and every distributor and retailer of such product, who obtains information which reasonably supports the conclusion that such product--
(1) fails to comply with an applicable consumer product safety rule or with a voluntary consumer product safety standard upon which the Commission has relied under section 2058 of this title;
(2) contains a defect which could create a substantial product hazard described in subsection (a)(2) of this section; or
(3) creates an unreasonable risk of serious injury or death,
shall immediately inform the Commission of such failure to comply, of such defect, or of such risk, unless such manufacturer, distributor, or retailer has actual knowledge that the Commission has been adequately informed of such defect, failure to comply, or such risk.
15 U.S.C. § 2064(b).

8

2072(a) is limited to knowing or willful "violation[s] of a consumer product safety rule, or any other rule or order issued by the [Consumer Product Safety] Commission." 15 U.S.C. § 2072(a).[6] The language of the statute thus restricts the right of action to violations of rules; nothing in the language of § 2072(a) authorizes private litigation for violations of *statutes*, such as the reporting requirement of 15 U.S.C. § 2064(b)(3). Id.

However, the Commission has enacted separate rules requiring "every manufacturer . . . who obtains information which reasonably supports the conclusion that the product . . . creates an unreasonable risk of serious injury or death, immediately to inform the Commission." 16 C.F.R. § 1115.2(b). These regulations establish a twenty-four hour timeline for reporting, 16 C.F.R. § 1115.14(e), the appropriate form of the disclosure, 16 C.F.R. § 1115.13(e), and a definition of "serious injury or death," among other procedural specifications. 16 C.F.R. § 1115.6(c). Thus, while there is no cause of action to enforce the statutory reporting provision itself, courts are divided over whether individuals may sue for violation of the Commission's rules, reiterating the disclosure requirement and setting applicable guidelines.

---

[6] Such rules encompass a variety of requirements, including for example, child-proof containers for prescription drugs, 16 C.F.R. § 1700.14(a)(10), specific warning labels affixed to lawn mowers, 16 C.F.R. § 1205.6(a), and maximum lead content of paint and children's toys, 16 C.F.R. § 1303.4.

A literal reading of the right of action statute, authorizing private litigation for violation of "any other rule . . . issued by the Commission," 15 U.S.C. § 2072(a), suggests that the statute authorizes private enforcement of the reporting requirements set forth in 16 C.F.R. § 1115, et seq. Indeed, this is the approach taken by a number of district courts, which relied upon the plain meaning of "any other rule" to permit injured individuals to bring civil suits for a defendant manufacturer's failure to report a defect. See Drake, 797 F.2d at 606 n.3 (citing Wilson v. Robertshaw Controls Co., 600 F. Supp. 671, 675 (N.D. Ind. 1985); Payne v. A.O. Smith Corp., 578 F. Supp. 733, 738 (S.D. Ohio 1983); Young v. Robertshaw Controls Co., 560 F. Supp. 288, 292-93 (N.D.N.Y. 1983); Butcher v. Robertshaw Controls Co., 550 F. Supp. 692, 698-99 (D. Md. 1981)).

In Drake v. Honeywell, Inc., 797 F.2d 603 (8th Cir. 1986), however, the Eight Circuit concluded that Congress clearly did not intend to create a private right of action for the disclosure provision, and the fact that the Commission promulgated rules interpreting the statutory reporting requirement does not suffice to render it privately justiciable. Since Drake, few courts have permitted private litigants to bring suit to enforce the disclosure provisions. Klingler v. Yamaha Motor Corp., 738 F. Supp. 898, 901 (E.D. Pa. 1990) (observing that "[a]lthough some courts have upheld a private cause of action, almost every court

10

since <u>Drake</u> has held otherwise").

Although the Third Circuit has yet to address the issue, the Tenth Circuit, <u>Kloepfer v. Honda Motor Co.</u>, 898 F.2d 1452, 1457-58 (10th Cir. 1990), First Circuit, <u>Benitez-Allende v. Alcan Aluminio do Brasil, S.A.</u>, 857 F.2d 26, 34-35 (1st Cir. 1988), Seventh Circuit, <u>Zepik v. Tidewater Midwest, Inc.</u>, 856 F.2d 936, 940-44 (7th Cir. 1988), Second Circuit, <u>Kelsey v. Muskin, Inc.</u>, 848 F.2d 39, 42-43 (2d Cir. 1988), Sixth Circuit, <u>Copley v. Heil-Quaker Corp.</u>, No. 86-3360, 818 F.2d 866 (6th Cir. 1987), and Eighth Circuit, <u>Drake</u>, 797 F.2d at 605-10, as well as the Eastern District of Pennsylvania, <u>Klingler v. Yamaha Motor Corp.</u>, 738 F. Supp. 898, 901 (E.D. Pa. 1990), have all concluded that no private right of action exists to enforce the reporting requirement.

These courts have found that "when read as a whole," the statute suggests Congress specifically intended to omit a right of action for the reporting requirements. <u>Drake</u>, 797 F.2d at 606. Had Congress intended private enforcement, Congress logically would have provided for such enforcement in the reporting statute itself. <u>Id.</u> (observing that Congress explicitly established private action for violation of a comparable statutory scheme, 15 U.S.C. § 1640(a) (1982) of the Consumer Credit Protection Act).

Perhaps more significantly, Congress enacted the CPSA in the shadow of a comprehensive body of administrative law. This well-

11

accepted legal backdrop includes a dichotomy between "interpretive" and "substantive" rules; only the latter can provide a judicially enforceable basis for litigation. Drake, 797 F.2d at 607 (citing Batterton v. Francis, 432 U.S. 416, 425 & n.9 (1977); United States v. Mersky, 361 U.S. 431, 437-38 (1960)). Interpretive rules, on the other hand, merely clarify and construe the underlying statute and "cannot be independently enforced as law." Id. (citing General Electric Co. v. Gilbert, 429 U.S. 125, 141 (1976); Skidmore v. Swift & Co., 323 U.S. 134, 140 (1944)). Consequently if the regulations setting forth the reporting requirements are "interpretive," as Drake and numerous other courts have concluded, they cannot establish grounds for private litigation. Drake, 797 F.2d at 607; Klingler, 738 F. Supp. at 901.

To determine that the rules are "interpretive," Drake and its progeny have relied upon the Commission's own interpretation of the regulations, the legislative history, and the numerous logistical and procedural complications that would ensue from private litigation of reporting issues.

The self-proclaimed purpose of the reporting rules, promulgated as 16 C.F.R. § 1115, is "to set forth the [Commission's] *interpretation* of the reporting requirements imposed on manufacturers (including importers), distributors, and retailers by [15 U.S.C. § 2064(b)] and to indicate the actions

12

and sanctions which the Commission may require or impose to protect the public from substantial product hazards, as that term is defined in section 15(a) of the CPSA." 16 C.F.R. § 1115.1 (emphasis added); see also 43 Fed. Reg. at 34990 (also using the term "interpretive"). In addition to referring to themselves as interpretations, the "regulations do not alter rights or duties; they either restate the statutory alterations or provide suggested interpretations of the statutory duties . . . [or] purport to proscribe conduct." Klingler, 738 F. Supp. at 906-07.

Even the language of the regulations is "tentative," setting forth examples and guidelines, and acknowledging that "decisions are made case-by-case, [affording] the Commission almost complete discretion." Klingler, 738 F. Supp. at 906-07 (noting that "for example, the section defining 'defect' contains several examples of defects, which the Commission offers '[t]o assist subject firms in understanding the concept of defect as used in the CPSA' 15 C.F.R. § 1115.4 (1989)"). Thus it appears that the Commission itself considered the rules a mere interpretation of the statute, an opinion which is entitled to deference. Drake, 797 F.2d at 607.

Moreover, the authority to promulgate substantive rules must be delegated by statute. While Congress authorized such rules under other parts of the Act, including, for example, 15 U.S.C. § 2056(a) (providing for consumer product safety standards), §

13

2063(b)(prescribing testing programs for consumer products), and § 2063(c) (1982) (establishing mandatory labeling guidelines), Congress did not explicitly authorize substantive rules pursuant to the reporting requirements of 15 U.S.C. § 2064(b)(3). See Drake, 797 F.2d at 607 n.6 (holding that the "Commission is powerless to issue legislative rules under section 15(b)," since that part of the Act lacks any language "delegating to the Commission the authority to promulgate rules which carry the force of statute"). The lack of explicit authorization indicates that Congress did not authorize promulgation of substantive rules creating reporting requirements, and nothing in the legislative history suggests otherwise. Id. at 610.

 Finally, private litigation is an impractical means for enforcement of the disclosure provisions. Civil liability for violations of the reporting requirement would extend to *all* manufacturers of a defective product, and not merely the entity actually responsible for the particular product that caused the injury. Zepik, 856 F.2d at 943 (noting that "nothing in section 23(a) suggests any basis for limiting liability to manufacturers, distributors or retailers of the articles actually involved in accidents"). A cause of action for violation of the reporting requirements would permit virtually all products liability litigation to proceed in federal court against virtually all manufacturers of a defective product. Klingler, 738 F. Supp. at

907 (quoting <u>Benitez-Allende</u>, 857 F.2d at 35). That Congress would intend such a result seems unlikely.

Moreover, the reporting scheme does not lend itself well to litigation by injured individuals, since the plaintiff could establish causation in only the most rare of circumstances. As the <u>Drake</u> Court observes:

> In essence, the plaintiff would have to prove that had the defendant reported in accordance with 16 C.F.R. Part 1115, the Commission pursuant to sections 15(c) and (d) would have held a hearing, determined that the product in fact contained a defect which presented a substantial product hazard, and ordered a remedy that would have prevented the plaintiff's injury. The causation problem not only burdens the plaintiff, it also strains the judicial factfinding process. It requires speculation as to whether and how the Commission would have responded to the defendant's report, and whether the Commission's response would have succeeded in preventing the plaintiff's injury. We doubt that Congress intended to set such a tortuous process in motion.

<u>Drake</u>, 797 F.2d at 610; <u>see also</u> <u>Zepik v. Tidewater Midwest, Inc.</u>, 856 F.2d at 942-43 ("The causal connection between a defendant's reporting violation and a plaintiff's injury is too attenuated and speculative to satisfy generally applicable standards of causation in fact or proximate causation.").

In particular, because the Commissioner has discretion to promulgate product safety rules, a plaintiff would be hard-pressed to establish that the Commission would have set forth a rule at all, much less a rule that was sufficiently timely to prevent the harm, since "almost three years typically pass

15

between the publication of a Notice of Proceeding and the issuance of a final consumer product safety rule." Klingler, 738 F. Supp. at 908-10 (noting that the "plaintiff could, in theory, supply affidavits from the pertinent Commission staff members and Commissioners" to establish that a rule would indeed have been promulgated). The Commission, and not private litigants, is clearly in the best position to sue manufacturers for failing to adhere to the reporting requirements, and that is precisely the enforcement contemplated by the statute. See United States v. Athlone Indus., Inc., 746 F.2d 977 (3d Cir. 1984). Individuals harmed by defective products may seek redress under state theories of strict liability. Drake, 797 F.2d at 610.

Accordingly, there is no cause of action for private enforcement of the CPSA's reporting provisions and Plaintiff's claim for violation of the CPSA will therefore be dismissed.

The accompanying Order shall issue today.

Dated: August 16, 2006         s/Robert B. Kugler
                               ROBERT B. KUGLER
                               United States District Judge